Arbona Lago, Juez Ponente
*638 TEXTO COMPLETO DE LA SENTENCIA
El apelante, Sr. José L. Nieves Rivera, acude ante nos para que revoquemos el veredicto de culpabilidad emitido en su contra por un jurado, respecto a dos cargos por violación al artículo 401 de la Ley de Sustancias Controladas de Puerto Rico, Ley Núm. 4 de 23 de junio de 1971, 24 L.P.R.A. β 2401, por distribución de heroína y cocaína.
I
La prueba de cargo consistió en el testimonio de los agentes José Flores Villalongo, Joel Rodríguez Otero, José A. Cruz Camacho y de la químico forense Gisela Maldonado González.
Hechos
El agente José Flores Villalongo, de la División de Drogas y Narcóticos de Carolina, declaró que el 9 de junio de 1997 recibió una llamada anónima en la cual se le indicó que el Sr. José Luis Nieves Rivera, conocido como “Tres Pullas” y residente en la parcela A-68 del Sector Villa Esperanza I en Carolina, se dedicaba a la venta de sustancias controladas y portaba un revólver calibre 38. De inmediato, el agente Flores Villalongo acudió a la División de Servicios Técnicos a investigar y encontró una tarjeta de ficheo con una foto del Sr. Nieves Rivera. En el contrainterrogatorio que le hiciera el abogado de la defensa durante el proceso judicial, el agente declaró que al buscar en los récords encontró que en el año 1994 se había hecho un allanamiento a la residencia del Sr. Nieves Rivera, que había resultado negativo.
Con el objetivo de corroborar la confidencia, el agente Flores Villalongo se dirigió al Sector Villa Esperanza I en Carolina, en un carro oficial no rotulado y utilizando una vestimenta similar a la utilizada por las personas del sector. Luego de estacionar el vehículo, caminó hasta el callejón donde ubicaba la parcela A-68 y se detuvo en la casa de esquina, como a cincuenta metros de la parcela A-68, para establecer desde allí su puesto de vigilancia. Al poco tiempo, observó a un individuo que se acercó al callejón y al Sr. Nieves Rivera haciendo una transacción de venta de una sustancia que aparentaba ser cocaína. No obstante, el agente no procedió a su arresto inmediato por entender que necesitaba pruebas adicionales para completar el caso.
Al día siguiente, 10 de junio de 1997, el agente Flores Villalongo acudió nuevamente al antes señalado puesto de vigilancia. Desde allí, pudo observar, como a eso de las 12:20 p.m., al Sr. Nieves Rivera efectuar otra transacción de venta de sustancias controladas a un individuo que llegó montado en una bicicleta roja.
Así las cosas, el 17 de junio de 1997, se expidió orden de allanamiento contra la residencia del Sr. Nieves Rivera ubicada en la carretera 874, parcela A-68 del Sector Villa Esperanza I en Carolina. En el diligenciamiento de la orden de allanamiento, intervinieron aproximadamente dieciséis agentes de la Policía.
El agente Joel Rodríguez Otero, uno de los agentes que intervino en el allanamiento, testificó que al llegar a las inmediaciones de la parcela A-68 observó al Sr. Nieves Rivera vendiendo a un individuo una sustancia que por la forma de su envoltura aparentaba ser heroína. Ante dicha situación, el agente Rodríguez Otero procedió a arrestar de inmediato al comprador, ocupándole la sustancia comprada, quien resultó ser el Sr. Femando Walker.
Mientras tanto, el Sr. Nieves Rivera corrió hasta dentro de su residencia y cerró la puerta principal. Los agentes forzaron la puerta con un marrón y entraron hasta el cuarto donde éste se encontraba. El agente Rodríguez Otero le entregó copia de la. orden de allanamiento y procedió a registrar el cuarto. Al abrir unas gavetas que estaban en el espaldar de la cama, el agente Rodríguez Otero encontró 8 cápsulas de “crack”, 21 “decks” de heroína, una bolsa transparente y una bolsa con dinero en efectivo, también se encontraron balas, pero no así armas de fuego. Luego de ello, el agente Rodríguez Otero arrestó al Sr. Nieves Rivera y le hizo las *639 advertencias de rigor.
La evidencia ocupada en el allanamiento fue retratada por el agente José A. Cruz Camacho. Este testificó que su función fue tomar fotografías de la evidencia ocupada y realizar las correspondientes pruebas de campo, las cuales arrojaron un resultado positivo a heroína y cocaína. El agente Cruz Camacho declaró respecto a todo lo relacionado a la cadena de evidencia y describió el contenido gráfico de las fotos que tomó. En el contrainterrogatorio, el abogado defensor indago respecto a si éste había participado en otros allanamientos a esa misma residencia, ocurridos en 1994, 1996 y 1997. El agente manifestó que no había intervenido en ninguno de los referidos allanamientos.
Por último, el Ministerio Público presentó el testimonio de la Sra. Gisela Maldonado González, químico forense del Instituto de Ciencias Forenses. Esta declaró que la evidencia ocupada en el allanamiento arrojo un resultado positivo a heroína y a cocaína.
II
La teoría de la defensa fue expuesta inicialmente por el representante legal del imputado. En síntesis, planteó que la División de Drogas y Narcóticos de Carolina tenía una persecución contra el imputado, Sr. José Luis Nieves Rivera, ya que consistentemente registraban su residencia, lo arrestaban, sometían el caso y finalmente nunca ocurría su convicción. La prueba de la defensa consistió en el testimonio de la esposa del imputado, Sra. Brendaliz Pérez Látimer y la de su vecina, Sra. Victoria Alonso.
Según el testimonio de la Sra. Pérez Látimer, su esposo se dedicaba a la hojalatería y pintura de carros en un taller que tenía al lado de su residencia. Declaró que en el año 1994 los agentes de la División de Drogas y Narcóticos de Carolina habían allanado su residencia, propinándole una golpiza a su esposo y arrestándolo. También declaró que después de llevarlo al tribunal “no pasó nada” y “salió bien”. Testificó que en el año 1996 los agentes allanaron nuevamente su residencia, pero no encontraron nada, suceso que volvió a repetirse el 21 de febrero de 1997, resultando arrestados tanto ella como su esposo “por lo que se ocupó”, pero que no obstante no fueron denunciados o procesados por ello. Señaló que a raíz de dichas intervenciones acudió junto a su esposo a formular una querella contra los agentes de la División de Drogas y Narcóticos de Carolina, por alegada persecución. Sin embargo, no se radicaron acusaciones contra los agentes por considerar que éstos intervinieron correctamente con los querellantes. Al ser contrainterrogada en relación a la evidencia específica que fue ocupada como producto de las intervenciones policíacas por ella alegadas, manifestó que no recordaba que dicha evidencia hubiese sido ocupada a su esposo.
La Sra. Victoria Alonso testificó que había visto en tres o cuatro ocasiones a los agentes de la Policía intervenir en la casa del Sr. Nieves Rivera. Afirmó que el imputado se dedicaba a la hojalatería y pintura y que no había notado ninguna conducta rara de su parte. En el contrainterrogatorio afirmó desconocer que como resultado de las referidas intervenciones policíacas se hubiese ocupado al Sr. Nieves Rivera sustancias controladas, evidencia relacionada con el trasiego de drogas y dinero en efectivo.
III
Luego de presentada la prueba de la defensa, el Ministerio Público presentó como prueba de refutación el testimonio de los agentes Carlos Concepción Padilla, José Aponte Rodríguez, Gilberto Sánchez Molina y Aurelio Jiménez Román.
El agente Carlos Concepción Padilla testificó que para el 21 de abril de 1994 diligenció una orden de allanamiento contra la residencia del imputado y ocupó 273 “decks” de heroína, 32 sobres de cocaína y aproximadamente $8,200.00 en efectivo. Manifestó que aunque el Ministerio Público autorizó la presentación de *640 cargos contra el imputado, el caso tuvo que ser archivado, toda vez que la orden de allanamiento desapareció.
El agente José Aponte Rodríguez testificó que el 15 de abril de 1995, mientras realizaba una vigilancia en un vehículo confidencial, observó al imputado realizando una transacción de sustancias controladas e intervino con éste ocupándole 49 “decks” de cocaína, 59 “decks” de heroína, dinero en efectivo y un rifle AR-15 con trescientas balas. Por estos hechos, le sometieron cargos al imputado, y se determinó causa probable, pero posteriormente se radicó una moción de supresión de evidencia que resultó a su favor.
El agente Gilberto Sánchez Molina declaró que el 17 de mayo de 1996 intervino en un operativo que realizó la División de Drogas y Narcóticos en la residencia del imputado. Manifestó que ocupó 17 balas 38mm, un frasco blanco, una tapa blanca con un polvo blanco en su interior y un sinnúmero de cápsulas vacías, tapas y $1,412.00 en efectivo. Toda esa evidencia fue examinada para determinar presencia de sustancias controladas, pero la misma arrojó un resultado negativo. Con relación a esta intervención no se presentaron cargos contra el imputado debido a que para ese entonces no era delito la posesión de parafemalia relacionada con sustancias controladas.
El agente Aurelio Jiménez Román declaró que el 21 de febrero de 1997 diligenció una orden de allanamiento en la residencia del imputado y ocupó una bolsa plástica transparente con polvo blanco en el interior, la que posteriormente fue examinada para determinar presencia de sustancias controladas y arrojó un resultado positivo a cocaína. En dicha ocasión fueron arrestados el imputado y su esposa, pero luego de ello se determinó no radicar cargos. Como consecuencia de estos hechos el imputado y su esposa presentaron una querella administrativa, que luego fue archivada.
Por último, a petición del Ministerio Público, el Tribunal tomó conocimiento judicial de que el individuo que fue arrestado junto al imputado, Sr. Femando Walker, hizo alegación de culpabilidad por violación al artículo 406 de la Ley de Sustancias Controladas y fue sentenciado a un año de cárcel. El Ministerio Público manifestó, además, que había estipulado con la defensa del imputado que la querella administrativa que radicaron el imputado y su esposa fue exclusivamente contra el agente Fortunato Navarro Villanueva, imputándole allanar su residencia y fabricarle un caso en febrero de 1997, pero que luego de la investigación correspondiente la misma fue desestimada.
Finalmente, el jurado rindió un veredicto de culpabilidad en los dos cargos por violación al artículo 401 de la Ley de Sustancias Controladas, supra, y el 30 de marzo de 1998, el Tribunal emitió la sentencia apelada condenando al apelante a 20 años de cárcel en cada cargo, a cumplir concurrentemente entre sí, pero consecutivos con cualquier otra pena que estuviese cumpliendo.
Inconforme, recurre ante nos el apelante e imputa la comisión de jos siguientes errores:

“Primer Error: Cometió error el Honorable Tribunal de Primera Instancia, Sala Superior de Carolina, al permitir la presentación del testimonio de varios agentes de la policía sobre hechos no relacionados con el caso y que eran inadmisibles en derecho.

Segundo Error: Cometió error el Honorable Tribunal de Primera Instancia, Sala Superior de Carolina, al admitir en evidencia la alegación del un co-acusado en un juicio por separado y por unos delitos diferentes.

Tercer Error: Cometió error el Honorable Tribunal de Primera Instancia, Sala Superior de Carolina, al encontrar el acusado culpable de los cargos imputados más allá de duda razonable. ”

*641 Exposición y Análisis
I
En primer lugar, el apelante alega que erró el Tribunal de Primera Instancia al permitir como prueba de refutación el testimonio de los agentes de la División de Drogas y Narcóticos, quienes testificaron sobre los allanamientos previamente efectuados en su residencia. Aduce que la admisibilidad de dichos testimonios constituye un error craso y perjudicial y conlleva un fracaso de la justicia. No tiene razón.
La Regla 44 de Evidencia, 32 L.P.R.A. Ap. IV, R. 44, dispone:

“(A) Quién puede impugnar. La credibilidad de un testigo puede ser impugnada por cualquier parte, incluyendo a la parte que llama al testigo.

(B) Medios de Impugnación. La credibilidad de un testigo podrá ser impugnada o sostenida mediante cualquier evidencia pertinente al asunto de su credibilidad, es decir, a la veracidad o mendacidad, incluyendo los siguientes aspectos:

(1) Comportamiento del testigo mientras declara y la forma en que lo hace.

(2) Naturaleza o carácter del testimonio.

(3) Grado de capacidad del testigo para percibir, recordar o comunicar cualquier asunto sobre el cual declara.

(4) Existencia o inexistencia de cualquier prejuicio, interés u otro motivo de parcialidad por parte del testigo.

(5) Manifestaciones anteriores del testigo.

(6) Sujeto a lo dispuesto en la Regla 45, el carácter o conducta del testigo en cuanto a veracidad o mendacidad.

(C) Impugnación y autoincriminación. Un testigo no renuncia al privilegio contra la autoincriminación cuando es examinado en torno a materia que afecta únicamente a cuestiones de credibilidad. ”

La citada Regla 44 establece que será admisible toda prueba pertinente a la veracidad o mendacidad de un testigo a los fines de evaluar su credibilidad. Además enumera, a modo ejemplificativo y no taxativo, diferentes medios para impugnar la credibilidad. Pueblo v. Galindo González, 129 D.P.R. 627, 642 (1991).
Una instancia clásica de impugnar la credibilidad de un testigo, que aunque no está expresamente enumerada en la Regla 44 se deriva de la misma, es la impugnación por contradicción. Id. En tal caso, se presenta evidencia para demostrar que parte o todo de lo que el testigo testificó en el juicio es falso, inexacto, poco preciso o erróneo. Id., a la pág. 643. La evidencia puede consistir en la declaración de otro testigo, así como cualquier convicción, aun cuando ésta no implique deshonestidad o falso testimonio. Id., a la pág. 644. Si bien es cierto que bajo la Regla 46 de Evidencia, 32 L.P.R.A. Ap. IV, R. 46, sólo se permite atacar la capacidad del testigo para decir la verdad, mediante evidencia de convicciones previas que impliquen falso testimonio o deshonestidad, en la impugnación por contradicción no existe dicha restricción, pudiéndose utilizar cualquier convicción a fin de evitar que un testigo mienta impunemente, sin poder ser contradicho. Id.
*642 Ahora bien, la prueba contradictoria sólo es admisible para probar la falsedad de lo declarado por el testigo y no para probar conducta específica en determinado momento. Id. Como se sabe, de conformidad a las disposiciones de la Regla 20 de Evidencia, 32 L.P.R.A. Ap. IV, R. 20, el fiscal no puede usar el contrainterrogatorio de un testigo de defensa para “abrir la puerta” y presentar prueba sobre el carácter del acusado, cuando no se ha hecho referencia a su carácter en el directo; tampoco puede presentar evidencia de la comisión de otros delitos, daño civil u otros actos, para demostrar el carácter de una persona o que actuó de conformidad con tal carácter, si dicha prueba no es pertinente para demostrar intención, preparación, plan, conocimiento, identidad o ausencia de error o accidente.
La prueba contradictoria tampoco será admisible cuando su valor probatorio sea de poca significación en relación con el perjuicio que pudiese ocasionar. A este respecto, la Regla 19 de Evidencia, 32 L.P.R.A. Ap. IV, R. 19, dispone que “[ejvidencia pertinente puede ser excluida cuando su valor probatorio es de poca significación en relación a cualesquiera de estos factores: a) peligro de causar perjuicio indebido; b) probabilidad de confusión; c) desorientación del jurado; d) dilación de los procedimientos; e) innecesaria acumulación de prueba acumulativa. ”
Debe quedar claro que la impugnación por contradicción no puede ser utilizada como subterfugio para traer evidencia inadmisible bajo otras disposiciones del ordenamiento probatorio. Pueblo v. Galindo González, supra, a la pág. 645.
Dentro del contexto específico del caso de autos, consideramos que el testimonio de los agentes de la División de Drogas y Narcóticos de Carolina sobre el resultado de los allanamientos previamente efectuados en la residencia del imputado, fue la forma más efectiva de impugnar por contradicción la credibilidad de las testigos de defensa, Brendaliz Pérez Látimer y Victoria Alonso.
Además, surge de la exposición narrativa de la prueba que fue el propio abogado defensor, mediante su contrainterrogatorio a los testigos de cargo y en su interrogatorio directo a los testigos de defensa, quien hizo necesario que el ministerio público indagara en el proceso respecto a los allanamientos previamente efectuados en la residencia del imputado. Obviamente, fue tal línea de interrogatorio de la defensa lo que “abrió la puerta” para que el Ministerio Fiscal, en su contrainterrogatorio a los testigos de la defensa y en su tumo de refutación, indagara sobre todo lo que los representantes del ministerio público habían ocupado al imputado durante los diversos allanamientos a los que antes fue sometido, conforme al propio testimonio de la defensa. Queda manifiesto que durante el proceso ante instancia, el abogado del apelante no objetó el contrainterrogatorio del Ministerio Público ni la prueba de refutación que este último presentó.
Ante tal cuadro fáctico procesal, la admisibilidad de dichos testimonios no constituyó “perjuicio indebido ”, mas bien formó parte natural del proceso adversativo evidenciario. “Una parte ofrece evidencia que tiende a causar perjuicio -no beneficio- a la otra parte. Una objeción en términos de que se excluya la evidencia por su efecto perjudicial no tiene mucho sentido; la otra parte puede contestar que justamente la ofrece para perjudicar o refutar las alegaciones de quien objeta. Perjuicio indebido se refiere mas bien a evidencia cuyo valor objetivo es mucho menor al que puede recibir por parte del juzgador en virtud de, por ejemplo, factores emocionales. ” Pueblo v. Nazario Hernández, 140 D.P.R. _ (1995), 95 J.T.S. 90, a la pág. 1022. Id., citando a Ernesto Chiesa, Práctica Procesal Puertorriqueña - Evidencia, Publicaciones J.T.S., 62-63 (1979).
En el presente caso, el hecho de que la evidencia pertinente ofrecida por el Ministerio Público en su tumo de refutación haya resultado perjudicial al apelante no significa que deba ser excluida, bajo las disposiciones de la Regla 19 de Evidencia, supra. Resolvemos que el Tribunal de Primera Instancia actuó correctamente al admitir dicha evidencia.
*643 II
En segundo lugar, el apelante alega que erró el Tribunal de Primera Instancia al tomar conocimiento judicial sobre la alegación de culpabilidad que hizo el coacusado, Sr. Femando Walker.
La Regla 11 de Evidencia, 32 L.P.R.A. Ap. IV, dispone:

“(A) Los tribunales podrán tomar conocimiento judicial de hechos que no son razonablemente objeto de controversia por:

(1) Ser de conocimiento general dentro de la jurisdicción territorial del tribunal, o

(2) ser susceptibles de determinación inmediata y exacta recurriendo a fuentes cuya exactitud no puede ser razonablemente cuestionada.

(B) Los tribunales podrán tomar conocimiento judicial a iniciativa propia y deberán tomar conocimiento judicial a solicitud de parte cuando ésta provea al tribunal con información suficiente para permitirle que tome tal conocimiento.

(C) La parte que solicita que se tome conocimiento judicial de un hecho debe notificar la solicitud a la parte adversa para dar oportunidad a ésta de prepararse y enfrentarse a la solicitud, si así lo estimare conveniente. Una parte tiene derecho a ser oída en tomo a si procede tomar conocimiento judicial.

(D) Los tribunales podrán tomar conocimiento judicial en cualquier etapa de los procedimientos, incluyendo la etapa apelativa.

(E) En casos criminales por jurado, el Juez instruirá a los miembros del jurado de que deben aceptar como concluyente cualquier hecho del cual se haga conocimiento judicial. ”

La citada regla 11 nos indica cuándo y cómo los tribunales pueden tomar conocimiento judicial de hechos adjudicativos. Hechos adjudicativos son aquellos “realmente en controversia de acuerdo a las alegaciones de las partes y al derecho sustantivo que gobierna el caso”. Asociación de Periodistas v. González Vázquez, 127 D.P.R. 704, 712-713 (1991). En los casos por jurado se trata de los hechos que de ordinario le corresponde dilucidar a ese cuerpo, y en los casos civiles o por tribunal de derecho, se trata de los hechos que conciernen específicamente a las partes involucradas. Id.
En lo pertinente a nuestra controversia, el inciso (A) (2) de la Regla 11 dispone que se puede tomar conocimiento judicial de aquellos hechos que sean “susceptibles de determinación inmediata y exacta” al recurrir “a fuentes cuya exactitud no puede ser razonablemente cuestionada”. Bajo este inciso es posible tomar conocimiento judicial de los procedimientos celebrados y de la sentencia o resolución dictada en cualquier causa seguida ante el mismo tribunal que toma conocimiento judicial o en cualquier otro tribunal dentro de la jurisdicción de aquél, por tratarse de hechos cuya comprobación o determinación puede efectuarse de forma exacta e inmediata.
El tribunal puede tomar conocimiento judicial del hecho “motu proprio”, lo que se conoce como el “conocimiento judicial permisible” y puede tomar conocimiento judicial a solicitud de parte, si ésta lo pone en condiciones de hacerlo, en cuyo caso vendría obligado a tomar conocimiento judicial, lo que se conoce como el “conocimiento judicial mandatorio”. Id., alas págs. 713-714.
*644 En el presente caso y a solicitud del Ministerio Público, el tribunal tomó conocimiento judicial de que el 1ro. de diciembre de 1997 la persona arrestada junto al imputado, Sr. Femando Walker, hizo alegación de culpabilidad por infracción al artículo 406 de la Ley de Sustancias Controladas y se le impuso un año de cárcel. No cabe duda que a la luz de lo dispuesto por la Regla 11 (A) (2), el tribunal podía tomar conocimiento judicial de la sentencia emitida contra el Sr. Femando Walker; por tratarse de un hecho cuya comprobación o determinación podía efectuarse de forma exacta e inmediata, bastaba tan sólo con acudir a la Secretaría del Tribunal.
No obstante, nos corresponde determinar si dicha evidencia debió ser excluida por razón de que causó un perjuicio indebido, a la luz de las disposiciones de la Regla 19 de Evidencia, supra.
La doctrina vigente establece que en ocasiones en que se procesa a dos o más personas mediante un sólo pliego acusatorio, y las mismas son enjuiciadas conjuntamente ante jurado, si una de éstas se declara culpable ya comenzado el proceso, es mandatorio que el trámite de la presentación judicial de dicha alegación de culpabilidad se lleve a cabo en ausencia del jurado, con el propósito de evitar que éstos sean influenciados indebidamente por ello en cuanto a los coacusados o respecto al que efectúa la alegación, en caso de que ésta no le sea aceptada Pueblo v. Ortiz Martínez, 116 D.P.R. 139 (1985), a la nota 13.
Aunque el contexto de la causa del epígrafe no es igual al antes señalado, nos parece que el perjuicio que se quiere evitar es idéntico, en cualquiera de los dos casos. Por tanto, consideramos que erró el tribunal de instancia al tomar conocimiento judicial de dicha evidencia en presencia del jurado, máxime cuando no impartió al jurado una instrucción específica a este respecto. Sin embargo, somos del criterio que dicho error no amerita la revocación de la sentencia apelada.
La Regla 4 de Evidencia dispone que:

“No se dejará sin efecto una determinación de admisión de evidencia ni se revocará sentencia o decisión alguna por motivo de admisión errónea de evidencia a menos que:

(1) La evidencia fue erróneamente admitida a pesar de la oportuna y correcta objeción de la parte perjudicada por la admisión y,

(2) el tribunal que considera el efecto de la admisión errónea entiende que ésta fue factor decisivo o sustancial en la sentencia o decisión cuya revocación se solicita. ”

De conformidad a la citada regla, corresponde a la parte afectada, aquí apelante, demostrar que ante el foro de instancia interpuso “oportuna y correcta objeción” al momento en que se intentó presentar la errónea pieza de evidencia, para que entonces un tribunal apelativo esté en posición de evaluar si dicha admisión errónea constituye un “factor decisivo o sustancial en la sentencia o decisión cuya revocación se solicita.” En el presente caso, no se cumple con el primero de los dos requisitos, ya que no surge de la exposición narrativa de la prueba que la defensa haya interpuesto “oportuna y correcta objeción” ante instancia, respecto a la admisión de la evidencia que ahora levanta como error revocable. Ello así, no es aplicable la citada Regla 4 a los hechos de este caso.
No obstante, nos corresponde también considerar las disposiciones de la Regla 6 de Evidencia que, en lo pertinente, establece que nada de lo dispuesto en la antes transcrita Regla 4 “... impedirá que un tribunal apelativo considere errores crasos y perjudiciales de admisión... de evidencia, a pesar de no haber mediado oportuna objeción, cuando el no corregir dichos errores resulte en un fracaso de la justicia”.
*645 Luego de examinar y analizar cuidadosamente la exposición narrativa de la prueba, estamos convencidos que la sentencia apelada debe sostenerse. No obstante la admisión en evidencia de la alegación de culpabilidad del coacusado en presencia del jurado, la sentencia recurrida, a la luz de la totalidad de las circunstancias, es correcta en derecho y fue emitida en un proceso justo e imparcial, en el cual se le garantizaron al apelante las exigencias de un debido procedimiento de ley. Pueblo v. Ruiz Bosch, 127 D.P.R. 762, 788 (1991). Tal admisión, ante los hechos que nutren este caso no constituye error que implique la revocación del fallo y sentencia.
III
En tercer lugar, el apelante alega que la prueba presentada por el Ministerio Público fue insuficiente, pues sólo se apoya en el testimonio alegadamente estereotipado del agente Flores Villalongo. No tiene razón.
Como se sabe, testimonio estereotipado es “aquél que se reduce a establecer los elementos mínimos necesarios para sostener un delito sin incluir detalles imprescindibles para reforzarlo”. Pueblo v. Rivera Rodríguez, 123 D.P.R. 467, 480 (1989); Pueblo v. Almodóvar, 109 D.P.R. 117, 125 (1979); Pueblo v. González del Valle, 102 D.P.R. 374, 378 (1974). Al evaluar un alegado testimonio estereotipado, se deben seguir las siguientes pautas: 1) todo testimonio estereotipado debe escudriñarse con especial rigor; 2) tanto los casos de la evidencia abandonada o lanzada al suelo como los casos del acto ilegal a plena vista deben, en ausencia de otras consideraciones, inducir sospecha de la posible existencia de testimonio estereotipado; 3) si el testimonio es inherentemente irreal o improbable debe ser rechazado; 4) el testimonio estereotipado puede perder su condición de tal, si, yendo más allá de los datos indispensables para probar los requisitos mínimos de un delito, se le rodea de las circunstancias en que funciona el agente, el término de su investigación, el área cubierta, los resultados obtenidos contra otros infractores atrapados en la redada y otros detalles relacionados, Pueblo v. Ayala Ruiz, 93 D.P.R. 704, 708 (1966); 5) la presencia de contradicciones, lagunas o vaguedades en el testimonio debe tender a reforzar el recelo con que hay que escuchar esta clase de declaraciones; 6) el peso de la prueba de librar el testimonio estereotipado de sospecha recae en el fiscal. Pueblo v. Rivera Rodríguez, supra, a las págs. 480-481; Pueblo v. González del Valle, supra, a la pág. 378.
Un examen cuidadoso del testimonio prestado por el agente Flores Villalongo nos convence que el mismo no constituye testimonio inherentemente irreal o improbable. Dicho testimonio está rodeado de detalles relativos a la investigación y sus resultados, no contiene contradicciones, vaguedades u omisiones esenciales.
No es irreal, ni improbable que el agente Flores Villalongo haya recibido una llamada anónima denunciando las actividades ilegales cometidas por el imputado. El agente testificó que corroboró la confidencia presentándose a las inmediaciones de la residencia del imputado durante los días 9 y 10 de junio de 1997. Para ello utilizó un vehículo no rotulado y una vestimenta similar a la utilizada por las personas del lugar. Como parte del testimonio vertido en el juicio, el agente Flores Villalongo hizo un dibujo en la pizarra “de cómo era el lugar donde él estaba observando”, del “callejón, la residencia y las casas que la rodeaban”. Véase pág. 3 de la Exposición Narrativa de la Prueba. También testificó que acudió de inmediato al fiscal para notificar el resultado de su investigación y éste le autorizó a solicitar la orden de allanamiento.
Cabe destacar que, “[e]l hecho de que las transacciones se hayan realizado a plena vista no hace el testimonio inherentemente irreal. Por el contrario, la criminalidad y el trasiego de drogas que sufre el país ha llegado a un nivel que los delincuentes no temen realizar transacciones en lugares donde pueden estar sujetos a ser vistos por terceras personas.” Pueblo v. Muñoz, Colón y Ocasio, 131 D.P.R. 965, 985 (1992); Pueblo v. Rivera Rodríguez, supra, a la pág. 481. Es doctrina reiterada que un tribunal apelativo no debe revocar una convicción a base de un planteamiento de insuficiencia de pmeba, que se reduce a uno de credibilidad de testigos, en ausencia de indicios de prejuicio, parcialidad o error manifiesto. Pueblo v. Torres Rivera, 139 D.P.R. _ (1994), 94 J.T.S. 150, a la pág. 510; Pueblo v. Hernández Mercado, 126 D.P.R. 427, 446 (1990); Pueblo v. *646 Acabá Raíces, 118 D.P.R. 369, 375 (1987).
Para que una convicción sea válida, se debe probar todos los elementos del delito imputado y conectar al acusado con los mismos. “La evidencia presentada por el Ministerio Fiscal debe ser suficiente en derecho, capaz de producir certeza o convicción moral en un ánimo no prevenido. La insatisfacción con la prueba es lo que se conoce como ‘duda razonable y fundada’.” Pueblo v. Amparo, 146 D.P.R. _, 98 J.T.S. 100, a la pág. 1404; Pueblo v. Colón, Castillo, 140 D.P.R. _ (1996), 96 J.T.S. 52, a la pág. 971; Pueblo v. Pérez Rivera, 129 D.P.R. 306, 315 (1991); Pueblo v. Maisonave Rodríguez, 129 D.P.R. 49, 65 (1991).
Aunque la culpabilidad de un acusado tiene que ser probada mediante evidencia que establezca todos los elementos del delito más allá de duda razonable, ello no significa que “[t]oda duda posible, especulativa o imaginaria, tenga que ser destruida a los fines de establecer la culpabilidad del acusado con certeza matemática. Sólo se exige que la prueba establezca aquella certeza moral que convence, que dirige la inteligencia y satisface la razón.” Pueblo v. Ramos Miranda, 140 D.P.R. _ (1996), 96 J.T.S. 51, a la pág. 955; Pueblo v. Rosario Reyes, 140 D.P.R. _ (1995), 95 J.T.S. 74, a la pág. 943; Pueblo v. Bigio Pastrana, 116 D.P.R. 748, 761 (1985).
El artículo 401 de la Ley de Sustancias Controladas de Puerto Rico, Ley Núm. 4 de 23 de junio de 1971, 24 L.P.R.A. 2401, dispone, en lo pertinente, que:

“(a) Excepto en la forma autorizada en este Capítulo, será ilegal el que cualquier persona, a sabiendas o intencionalmente:

Fabrique, distribuya, dispense, transporte u oculte, o posea con la intención de fabricar, distribuir, dispensar, transportar u ocultar una sustancia controlada. ”

Según el citado artículo 401, la posesión de la sustancia controlada requiere una intención específica, bien fuere la de fabricarla, distribuirla, dispensarla, transportarla u ocultarla, pero todo ello con referencia al comercio ilegal.
Un análisis detallado de la exposición narrativa de la prueba estableció de forma contundente que ante instancia se estableció válidamente todos los elementos del delito de distribución de sustancias controladas, Art. 401 de la Ley de Sustancias Controladas de Puerto Rico, supra, y la conexión del imputado con los hechos. Tanto el agente Flores Villalongo como el agente Rodríguez Otero observaron al imputado ejecutando transaciones de drogas narcóticas controladas. Es un hecho incontrovertido la ocupación en la residencia del apelante de cocaína y heroína. El agente Cruz Camacho retrató la evidencia ocupada y le realizó las pruebas correspondientes, las cuales arrojaron un resultado positivo a heroína y cocaína, resultado que fue corroborado por Gisela Maldonado, químico forense del Instituto de Ciencias Forenses.
La prueba desfilada en este caso demostró más allá de toda duda razonable la culpabilidad del apelante, por lo cual confirmamos el veredicto emitido por el jurado.
Dictamen
Conforme a lo señalado, se dicta la presente confirmando la sentencia apelada.
Lo acordó el Tribunal y lo certifica la Secretaria General.
Aida Ileana Oquendo Graulau
Secretaria General